IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MARY CATHERINE MOODY,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>)<br>MICHAEL J. ASTRUE,  )<br>Commissioner of Social Security,  )<br>)<br>Defendant.  ) | **MEMORANDUM OPINION<br>AND RECOMMENDATION**<br><br><br>1:07CV717 |

Plaintiff, Mary Catherine Moody, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

**Procedural History**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[1] on September 15, 2003, with an alleged onset of disability (AOD) of February 4, 2003. Tr. 89. The applications were denied

---

[1] The documents associated with Plaintiff's SSI application are missing from the transcript.

initially and upon reconsideration. Tr. 60, 61. Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ). Tr. 77. Present at the hearing, held on November 1, 2005, were Plaintiff, her attorney, and a vocational expert (VE). Tr. 26.

By decision dated April 26, 2006, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 17. On August 1, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 6, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's fibromyalgia; migraine headaches; and anxiety are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: lift and/or carry up to ten pounds frequently and 20 pounds occasionally. The claimant can sit, stand, and/or walk for up to six hours each in an eight-hour workday. She would require a sit/stand option at 30-45 minute intervals. Due to pain in her back and legs, the claimant is limited to occasional climbing of stairs, no climbing of ropes or ladders, and occasional bend, stoop squat. Due to headaches, she has environmental limitations, so that she should avoid concentrated exposure to fumes, dust, odors, poor ventilations, noises and vibration. She should also avoid concentrated exposure to work place hazards like machinery or heights. She has anxiety but it does not affect her ability to work with the public, coworkers, or respond to supervision. However, it may cause her to be unable to remember detailed instruction, but she could follow simple instruction. Based upon her allegations, and not supported by record – due to anxiety, she would require a low stress, non productive type work

7. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

12. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.20 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as painter roller assembler (DOT 739.687-134, light SVP 1; cotton ball assembler (920.686-014) light, SVP 2; hand bander of paper products (920.687-026) light SVP 1; and bottle line attender (920.687-042) light SVP 1. These jobs exist in the

state of North Carolina in number of 3,200 and there are 357,000 to 400,000 such jobs in the US. There are 500 to 600 jobs in the Greensboro area.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

Tr. 23-24.

**Analysis**

In her brief before the court, Plaintiff argues that the Commissioner's findings are in error because the ALJ (1) relied on VE testimony that did not correspond with the ALJ's hypothetical and (2) failed to consider the assessment of Plaintiff's treating physician. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

Scope of Review

The Act provides that, for "eligible"[2] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).[3]

---

[2] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

[3] The regulations applying these sections are contained in different parts of Title 20 of the Code of Federal Regulations (C.F.R.). All regulatory references herein will be to Title (continued...)

4

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration ("SSA"), by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. Section 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is

---

[3] (...continued)
20, "Employees' Benefits." Part 404 applies to federal old-age, survivors, and disability insurance, and Part 416 applies to supplemental security income for the aged, blind, and disabled. Since the relevant portions of the two sets of regulations are identical, the citations in this report will be limited to those found in Part 404.

> evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Pertinent Evidence Presented

As of the date of the ALJ's decision, Plaintiff was thirty-nine years of age. Tr. 18. The ALJ found that she has a high school education and past work as a grocery store clerk, a ham folder, and a restaurant cook. According to the ALJ, Plaintiff initially alleged disability due to migraine headaches and low back pain.

The ALJ decided that Plaintiff had not engaged in substantial gainful activity since her AOD. She also determined that Plaintiff met the disability insured status requirements of the Act and continued to do so through the date of her decision. Further, the ALJ found the medical evidence to establish that Plaintiff suffered from the severe impairments of fibromyalgia, migraine headaches, and anxiety. She concluded, nevertheless, that none of these impairments, either singly or in combination, met or equaled any of the Listing of Impairments.

6

1. VE Testimony

Plaintiff contends that the VE responded to the ALJ's hypothetical with jobs that did not match the hypothetical's criteria. At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The purpose of bringing in a VE is to assist the Commissioner in meeting this burden. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). For a VE's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments. Hines v. Barnhart, 453 F.3d 559, 566 (4th Cir. 2006) (quoting Walker, 889 F.3d at 50-51).

The ALJ's hypothetical claimant matched Plaintiff in age, educational level, and work experience. See Tr. 56. In addition, the ALJ proposed:

> Assume that because of pain associated with fibromyalgia or with other problems with the back, this person could only do light exertional level work, that is lift 20 pounds occasionally, 10 pounds frequently, stand, walk, sit six hours out of an eight-hour day, but this person would need a position to where they could alternate between sitting and standing in 30 to 45 minutes [sic] intervals. Assume further that, again, due to pain in the back and the legs, that this person would be limited to occasional climbing of stairs and no climbing of ropes and ladders, occasional balancing, occasional bending and stooping, crouching, and squatting. Assume further that because of having headaches, that this person would have environmental limitations. She is, this hypothetical person is to avoid concentrated exposure to fumes, dust, odors, poor ventilation, extreme noises, extreme vibrations. And because she testified that she may become dizzy at times with the headaches, she needs to avoid concentrated exposure to workplace hazards such as

> moving machinery, unprotected heights, et cetera. Assume further –
> and I haven't been able to put this together – assume that this person
> has anxiety that affects her, but does not, has not and does not affect
> her ability to work with the public, does not and has not affected her
> ability to work with coworkers, does not and has not affected her ability
> to respond to supervision. However, this anxiety may cause her not to
> be able to remember and follow detailed instruction, but she would be
> able to remember, understand, and follow simple instruction.
>
> [D]ue to this anxiety, this person would require a low-stress, non-
> productive type of work situation. . . .

Tr. 56-57. The VE prefaced her answer with, "At the very low, lowest level of specific vocational preparation . . . ." Tr. 57. She then listed the jobs relied upon by the ALJ in her decision.

Plaintiff complains that the Dictionary of Occupational Titles (hereinafter, the "DOT")[4] contains descriptions indicating that each job listed by the VE "is performed in a production setting, which implies that the jobs have production requirements that the worker would be required to satisfy." Pl.'s Br. at 7. Further, three of the four jobs require the use of machinery, specified by the ALJ as a workplace hazard to be avoided.

The regulations, however, provide that the DOT is not the sole source of admissible information concerning the availability of appropriate jobs. In particular, Section 404.1566(e) contemplates the use of VEs in determining complex issues; as pointed out by Defendant, Plaintiff fails "to identify anything in the DOT

---

[4] United States Dep't of Labor, 4th ed. 1991. The DOT is a Labor Department guide to job ability levels that has been approved for use in Social Security cases. See Section 404.1566(d)(1).

8

descriptions that indicate any specific production requirements." Def.'s Br. at 10. In fact, the regulations do not require the Commissioner or the VE to rely on classifications in the DOT at all. See Section 404.1566(d). And Social Security Ruling (SSR) 83-14 explains that publications such as the DOT "will be sufficient for relatively simple issues. In more complex cases, a person or persons with specialized knowledge would be helpful. . . . . [VEs] may testify for this purpose at the hearing[.]" 1983-1991 Soc. Sec. Rep. Serv. 41, 45 (West 1992).

> The DOT actually self-limits:
>
> > The [DOT] itself contains a disclaimer, moreover, noting that it provides only "composite descriptions of occupations as they may typically occur." The descriptions listed in the dictionary "may not coincide with a specific job as actually performed in a particular establishment or any given industry." The dictionary is based only on a selective sampling of 75,000 job sites out of the many millions of work places in the United States. Thus, the dictionary says, "[a]n occupation found to have certain characteristics in job situations observed by the employment service does not necessarily preclude the same occupation from having different characteristics in other job situations." It would be manifestly inappropriate to make the [DOT] the sole source of evidence concerning gainful employment.

Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994), cited in Cline v. Chater, 1996 WL 189021 (4th Cir. Apr. 19, 1996).

On the other hand, SSA has determined that VE testimony can be relied upon because VEs are recognized as "persons who have, through training and experience in vocational counseling or placement, an up-to-date knowledge of job requirements, occupational characteristics and working conditions, and a familiarity with the

9

personal attributes and skills necessary to function in various jobs." Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). See also SSR 83-14, 1983-1991 Soc. Sec. Rep. Serv. at 45. Thus, absent contrary evidence, the ALJ is justified in relying upon the determinations of the VE. See also Fast v. Barnhart, 397 F.3d 468, 470-72 (7th Cir. 2005) ("[T]he ALJ is entitled to rely on the expert testimony of a VE."); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony."); Carey v. Apfel, 230 F.3d 131, 145 (5th Cir. 2000) ("'The value of a [VE] is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" (internal quotation omitted)).

In addition, SSA provides that, "[w]hen a [VE] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [VE] evidence and information provided in the DOT." SSR 00-4p, 65 Fed. Reg. 75759, 75760. The ALJ so questioned the VE, and the VE answered that there was no conflict. Plaintiff's counsel did not question the VE with respect to the DOT or bring any inconsistencies to the ALJ's attention.

Nothing in Ruling 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct. Furthermore, even if there is a conflict between the expert's testimony and the DOT, "[n]either the DOT nor the [VE] evidence automatically 'trumps' when there

is a conflict." Id. Here, the ALJ specifically asked if there was a conflict and the uncontradicted testimony of the VE indicated that no conflict existed. On the whole, the ALJ was certainly justified in relying on the evaluation of the VE, even where that expert's testimony may have differed from the job descriptions or classifications in the DOT. Accordingly, the ALJ's step five finding is supported by substantial evidence.

2. Treating Physician's Opinion

Plaintiff argues that the ALJ erred in not finding that she had additional severe mental health impairments. An impairment is severe when, either by itself or in combination with other impairments, it "significantly limits" a claimant's physical or mental abilities to perform basic work activities. Section 404.1521(a).

In support of her claim, Plaintiff points to the notes of Dr. Jonathan Leinbach, a psychiatrist who managed Plaintiff's medications. At her initial visit with him, Dr. Leinbach listed Plaintiff's "[d]ifferential diagnosis at this time"[5] as post-traumatic stress disorder ("PTSD"), major depression, mood disorder due to medical condition, and panic disorder without agoraphobia. Tr. 374. Apparently, however, he decided that, among these potentials, Plaintiff suffered only from panic disorder without

---

[5] "A 'differential diagnosis' is 'the determination of which one of two or more diseases a patient is suffering from, by systematically comparing and contrasting their clinical findings.'" Harris v. Health & Hosp. Corp., 852 F. Supp. 701, 703-04 (S.D. Ind. 1994) (quoting Dorland's Medical Dictionary 461 (27th ed.)).

11

agoraphobia and major depression, id., although at Plaintiff's next visit, he added the PTSD diagnosis, see Tr. 343.

Plaintiff states that Dr. Leinbach's diagnoses indicated that they "are the primary mental impairments limiting Plaintiff from engaging in work-related activities." Pl.'s Br. at 10. Yet Dr. Leinbach never opined that these disorders "significantly limit" Plaintiff's mental abilities to perform basic work activities,[6] nor did her other mental health caregivers. Plaintiff's mother stated that she has no problems with memory, concentration, or understanding, and that she follows instruction "very well." Tr. 130. She added that Plaintiff had no problems getting along with others, Tr. 129, and Plaintiff said she got along well at work, Tr. 212.

As to mental impairments, Plaintiff consistently refers only to her panic attacks, which she has been having for some twenty years, see Tr. 373, yet there is no indication that Plaintiff ever stopped working because of them. Cf. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (finding it "significant" to the severity analysis that plaintiff failed to allege depression in her benefits application). In fact, Plaintiff testified that she had not had a panic attack at work for the three years that she was employed as a cashier. Tr. 50. Plaintiff blamed her physical impairments for her inability to continue such work. See Tr. 34, 43. And in spite of her history of

---

[6] The regulations provide that "basic work activities" affected by mental impairments would include (i) understanding, carrying out, and remembering simple instructions; (ii) use of judgment; (iii) responding appropriately to supervision, co-workers and usual work situations; and (iv) dealing with changes in a routine work setting. Section 404.1521(b)(3)-(6).

12

panic attacks, Plaintiff said that she goes to Wal-Mart two to three times a week just to "walk around." Tr. 212.

Indeed, Plaintiff told the state agency's consultative examiner that she had not had a panic attack in "several months," and that they were "pretty well controlled" on medication. Tr. 212. Dr. Gregory Villarosa, like Dr. Leinbach, diagnosed Plaintiff with panic disorder without agoraphobia and major depression, recurrent. Tr. 213. Yet he echoed Plaintiff's assessment that her panic disorder was well-controlled on medication (as did Dr. Leinbach, Tr. 375), and described her depression as "mild." Id. Cf. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (if symptoms are, or can be, reasonably controlled by medication, they may not be considered disabling under the Act). He observed that she had fair sustained attention and concentration, and adequate social judgment. Tr. 212. Dr. Villarosa concluded that Plaintiff "does appear to have the cognitive capacity to maintain focus and pace with tasks." Id.

Plaintiff complained of no mental health disorders other than her panic attacks, and even denied depression and anxiety. Tr. 170; see also Tr. 212. Before September 2004, some eighteen months after her AOD, Plaintiff had not sought mental health treatment during the relevant period.[7] Cf. Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (an "unexplained inconsistency" between claimant's characterization of her condition's severity and the treatment sought is "highly

---

[7] The transcript contains no records of mental health treatment which pre-date September 2004.

probative" of her credibility). Simply because Dr. Leinbach diagnosed, and treated, Plaintiff for specific disorders does not mean that he found that they significantly impaired her ability to engage in basic work activities. Cf. Gross v. Heckler, 785 F.2d 1163, 1165-66 (4th Cir. 1986) (a mere diagnosis of a condition is not enough to prove disability).

Dr. Leinbach initially assessed Plaintiff's "GAF"[8] at 45, indicating "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. 2000). As Defendant points out, SSA has determined that a claimant's GAF score is not considered to have a "direct correlation to the severity requirements." 65 Fed. Reg. 50746, 50764-65 (2000). Moreover, Plaintiff's records fail to support this assessment. As discussed above, Plaintiff's only mental health complaint was that she suffered from occasional panic attacks, which were mostly controlled by her use of medication. Plaintiff's mother stated that she spends time with others, goes to church if she is not in a lot of pain,

---

[8] The "GAF" – global assessment of functioning – "is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" Boyd v. Apfel, 239 F.3d 698, 700 n.2 (5th Cir. 2001) (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 1994)). The GAF Scale, ranging from zero to 100, is divided into ten ranges of functioning, e.g., 90 (absent or minimal symptoms) to 1 (persistent danger of severely hurting self or others, or unable to care for himself). The GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range. The lower the GAF score, the more serious the symptoms.

and has no problems getting along with others. Tr. 130. Plaintiff denied depression, attempted suicide, or ideas of suicide. Tr. 170, 212.

Plaintiff told Dr. Villarosa that she got along well at work. Tr. 212. Dr. Villarosa noted that Plaintiff had adequate social skills and a cooperative attitude. He saw no phobic processes or psychotic symptoms. Plaintiff's thought content was appropriate, her insight fair, and her social judgment adequate. Tr. 212-13.

The record from Plaintiff's screening for mental health treatment reads that she was well-groomed, her attitude was appropriate, and her motor activity was unremarkable. Tr. 370. Plaintiff's thought form and content were normal, she appeared to have no cognitive problems, and she was oriented in all three spheres. On a second visit, Plaintiff allowed that she had no legal or relationship problems. Tr. 374. Her therapist found Plaintiff to be open to talking about her stress. Tr. 355.

Just before he assessed her GAF, Plaintiff told Dr. Leinbach that she had a variable mood with irritability, occasional depression, decreased energy, and variable sleep. Tr. 373. Yet she had neither flashbacks nor nightmares, and she was able to enjoy some things, such as visiting. Plaintiff denied homicidal or suicidal ideas, hallucinations, obsessive-compulsive actions, agoraphobia, and mania. Dr. Leinbach observed that she was generally cooperative, maintained fair eye contact, and had normal speech with no evidence of pressure. Plaintiff's psychomotor behavior was normal, her thought process logical and goal-directed, her affect full

15

and appropriate. In addition, the doctor found Plaintiff's insight to be fair, her judgment good, and her cognition intact.

That said, to be sure the ALJ found that Plaintiff suffered from a "severe" mental impairment, and he accordingly included limitations in the RFC to reflect this finding, which assessment Plaintiff has not challenged. The court agrees with the Eastern District court that,

> At step two, an ALJ must determine whether a claimant's impairment(s), individually or in combination are "severe." [§ 404.1523.] As long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process, which in this case, was done. See [§ 404.1523]. [S]ee also [SSR] 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (explaining when an ALJ determines that one or more impairments is severe, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe' "). In particular, the ALJ thoroughly discussed the evidence relating to all of Claimant's impairments, . . . and took the combination of Claimant's impairments into account in determining his RFC. (R. 27-28); see Newsome v. Barnhart, 444 F. Supp. 2d 1195, 1200-01 (M.D. Ala. 2006) (where the ALJ did not specifically address the claimant's diagnosis of Oppositional Defiant Disorder ("ODD") and did not make a finding as to whether ODD constituted a severe impairment, the court nonetheless affirmed the ALJ's decision because the ALJ "did consider and discuss the underlying evidence relating to [claimant's] ODD"); see also Ottman v. Barnhart, 306 F. Supp. 2d 829, 839 (N.D. Ind. 2004) (no error in ALJ failing to determine whether anxiety and pain disorders were "severe" at step two if evidence of disorders was considered in reaching conclusion at step five); see also Mariarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987) (holding failure to find that an impairment [sic] severe was harmless error where other impairments were deemed severe). Accordingly, because the ALJ did not end his analysis at step two, but continued with the remaining steps in his disability determination, the ALJ's failure to set forth a specific finding

16

as to the severity or non-severity of Claimant's . . . impairment did not constitute reversible error. See Ottman, 306 F. Supp. 2d at 839.

Pittman v. Astrue, 2008 WL 4594574, *4 (E.D.N.C. Oct. 10, 2008).

The ALJ indeed explained how she weighed the medical evidence of Plaintiff's mental impairments. She first noted that, by August 2003, Plaintiff was already taking Prozac for depression. Tr. 19. Not until January 14, 2005, however, did Plaintiff see a psychiatrist, Dr. Leinbach. The ALJ explained:

> The claimant reported panic attacks. She was taking Prozac and Ambien at the time of her examination. Behavioral counseling and medication was [sic] prescribed. *She was diagnosed with major depression and panic disorder.* The claimant's primary concerns were the health of her step daughter and financial distress.

Id. (emphasis added). The ALJ noted Dr. Leinbach's observations on February 18, 2005, that Plaintiff was cooperative and pleasant, with a bright, open expression and good hygiene. Tr. 20. She saw that Plaintiff's mental health treatment showed no thought disorder or memory problems, and that Dr. Villarosa attributed Plaintiff's work-related difficulties largely to physical problems. Tr. 21.

The ALJ discussed Plaintiff's testimony that she goes to the store to shop, although sometimes her panic disorder forces her to leave. Tr. 20. Plaintiff also said that she usually got along with others and is not short-tempered, and alleged memory loss.

The ALJ determined that Plaintiff's records reflected only mild limitations to her activities of daily living and social function, moderate limitations in her concentration, and no evidence of episodes of decompensation in work-like settings, nor was

17

Plaintiff confined to her home. The ALJ concluded that Plaintiff's mental impairment would limit her ability to remember detailed, but not simple, instructions, and that Plaintiff would require a low stress, non-productive type job. As Plaintiff has alleged no prejudice from the ALJ's failure to label her PTSD and depression severe, and the court has not identified any, the case will not be remanded. See Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988) ("'This court will not vacate a judgment unless the substantial rights of a party have been affected.'") (quoting Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir.1988)).

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and the correct legal principles were applied. Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **AFFIRMED**. To this extent, Plaintiff's motion for summary judgment (pleading no. 10) seeking a reversal of the Commissioner's decision should be **DENIED**, Defendant's motion for judgment on the pleadings (pleading no. 12) should be **GRANTED**, and this action should be **DISMISSED** with prejudice.

                                                                          WALLACE W. DIXON
                                                                          United States Magistrate Judge

January 30, 2009

18

Case 1:07-cv-00717-JAB-WWD   Document 14   Filed 01/30/09   Page 18 of 18